# EXHIBIT A

Fi'  In Office Mar-25-2009 12:08:04
fL    2009-0044776-CV
Page 1

**IN THE SUPERIOR COURT OF COBB COUNTY**

**STATE OF GEORGIA**

Jay C. Stephenson
Clerk of Superior Court Cobb County

Hosch, E. John
Centre Equities, Inc.
Cherokee Investments, LLC
**PLAINTIFF**

**CIVIL ACTION NUMBER** 09-1-2768-34

**COST DEPOSIT** _____

**VS.**

Prozer, Michael A        AA+m Holdings, LLC
XchangAGENT, Inc.     Wachovia Bank, NA.
XA worldwide, Inc.
**DEFENDANT**

**SUMMONS**

**TO THE ABOVE NAMED DEFENDANT:**

    **You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:**


**an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. NOTE: If a hearing has already been scheduled in this case, you must appear at that scheduled hearing, regardless of whether the 30 days for filing an answer has elapsed.**

This _____25th_____ day of _____March_____, 20_09_.

                    **JAY C. STEPHENSON,
                    Clerk of Superior Court**

                    By _____
                          Clerk

    **To Defendant upon whom this petition is served:**

this copy of complaint and summons was served upon you _____, 20_____

                    _____
                    **Deputy Sheriff, Cobb County, Georgia**

Fi'  In Office Mar-25-2009 12:08:04
fL    2009-0044776-CV
Page 1

Jay C. Stephenson
Clerk of Superior Court Cobb County

## IN THE SUPERIOR COURT OF COBB COUNTY
## STATE OF GEORGIA

Hosch, E. John
Centre Equities, Inc.
Cherokee Investments, LLC

**PLAINTIFF**

CIVIL ACTION
NUMBER      09-1-2768-34

COST DEPOSIT _____

**VS.**

Prozer, Michael A      AA+m Holdings, LLC
XchangAGENT, Inc.   Wachovia Bank, NA.
XA worldwide, Inc.

**DEFENDANT**

### SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. **NOTE:** If a hearing has already been scheduled in this case, you must appear at that scheduled hearing, regardless of whether the 30 days for filing an answer has elapsed.

This _____25th_____ day of ____March____, 20_09_.

JAY C. STEPHENSON,
Clerk of Superior Court

By_____
Clerk

To Defendant upon whom this petition is served:

This copy of complaint and summons was served upon you _____20_____

_____
Deputy Sheriff, Cobb County, Georgia

Fi'  In Office Mar-25-2009 12:08:04
fL  2009-0044776-CV
Page 1

IN THE SUPERIOR COURT OF COBB COUNTY
STATE OF GEORGIA

Jay C. Stephenson
Clerk of Superior Court Cobb County

_Hosch, E. John_
_Centre Equities, Inc._
_Cherokee Investments, LLC_
PLAINTIFF

CIVIL ACTION NUMBER _09-1-2768-34_

COST DEPOSIT _____

VS.

_Prozer, Michael A_   _AA+m Holdings, LLC_
_XchangAGENT, Inc._   _Wachovia Bank, NA._
_XA worldwide, Inc._
DEFENDANT

SUMMONS

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. NOTE: If a hearing has already been scheduled in this case, you must appear at that scheduled hearing, regardless of whether the 30 days for filing an answer has elapsed.

This ___25th___ day of ___March___, 20 _09_.

JAY C. STEPHENSON,
Clerk of Superior Court

By _____
CLERK

To Defendant upon whom this petition is served:

This copy of complaint and summons was served upon you _____ 20_____

_____
Deputy Sheriff, Cobb County, Georgia

IN THE SUPERIOR COURT OF COBB COUNTY
STATE OF GEORGIA

COBB COUNTY, GA
FILED IN OFFICE

2009 MAR 25 PM 12: 25

~Jay C. Stephenson~

COBB SUPERIOR COURT CLERK

| | |
|---|---|
| E. JOHN HOSCH, Individually<br>CENTRE EQUITIES, INC. a Georgia<br>Corporation; and<br>CHEROKEE INVESTMENTS, LLC A Delaware<br>Limited Liability Company<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL A. PROZER, III individually<br>XCHANGEAGENT, INC. a Florida Corporation<br>XA WORLDWIDE, INC. a Florida Corporation<br>AA&M HOLDINGS, LLC, a Florida Limited<br>Liability Company, and<br>WACHOVIA BANK, NA<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>CIVIL ACTION<br>FILE NO. _09-1-2758-34_ |

## COMPLAINT

COME NOW, Plaintiffs E. John Hosch, Centre Equities, Inc. and Cherokee Investments,

LLC, (hereinafter "Plaintiffs"), by and through Counsel, and files this their Complaint for civil

wrongs and redress from consequential damages and punitive damages to discourage the within

wrongful behavior of Michael A. Prozer, III, xchangeAGENT, Inc. and XA Worldwide, Inc.,

AA&M Holdings, LLC and Wachovia Bank, NA (hereinafter "Defendants") in the future, plus

attorney fees and costs of this action and shows this Court as follows:

### JURISDICTION AND VENUE.

This Court has jurisdiction pursuant to O.C.G.A. § 9-10-91. Defendant, Michael Prozer,

visited the Cobb County office of Plaintiffs for the purpose of conducting the sale of certain

stock and loan business on behalf of Defendants and personally. Michael Prozer, individually

and as CEO of xchangeAGENT, Inc. and XA Worldwide, Inc. negotiated the closing documents

in Georgia and by electronic mail and regular United States mail. Plaintiff, E. John Hosch,

entered into a contract for services in Cobb County, Georgia, which contract was to be

performed in whole or in part in Cobb County, Georgia by Defendants.

Pursuant to O.C.G.A. § 9-10-91(a), Defendants have had sufficient contacts with Georgia

and Cobb County for jurisdiction and venue to rest in Cobb County, Georgia to subject all said

Defendants to the jurisdiction of this Honorable Court.

<u>**SERVICE OF PROCESS**</u>

Michael A. Prozer, III is a resident of Florida. Defendant Prozer may be personally

served at the following addresses:

| | |
|---|---|
| 1753 Ripley Run<br>Wellington, Florida 33414 | 9400 Laws Road<br>Clermont, Florida 34714 |
| 5010 West Carmen Street<br>#2130<br>Tampa, Florida 33609 | 4221 West Spruce Street<br>Suite 1316<br>Tampa, Florida 33607 |

xchangeAGENT, Inc. is a Florida Corporation. Service may be perfected by service

upon its Registered Agent, S. Avery Smith, P.A., located at 2859 Willow Bay Terrace,

Casselberry, Florida 32707.

XA Worldwide, Inc. is a Florida Corporation. Service may be perfected by service upon

its Registered Agent, S. Avery Smith, P.A., located at 2859 Willow Bay Terrace, Casselberry,

Florida 32707.

2

AA&M Holdings, LLC is a Florida Limited Liability Company.  Service may be perfected upon its Registered Agent, Steven Yonkman (Yonkman Steve), located at 9400 Laws Road, Clermont, Florida 34714.

Wachovia Bank, National Association is a Delaware Corporation.  Service may be perfected by service upon its Registered Agent, Corporation Service Company, 40 Technology Parkway South, #300, Norcross, Georgia 30092.

Please note that every allegation is an allegation in every Count as if fully restated therein.

## COUNT I

### Fraud-in-the-Inducement: The Bank Loan and Hosch Guaranty

1.     On several occasions, Defendant Michael Prozer, traveled to Acworth, Georgia for meetings at Plaintiffs' offices for the purpose of engaging Mr. Hosch and his respective companies into a business investment relationship with Defendants.

2.     Michael Prozer engaged Mr. Hosch to introduce him to financial lenders and to help him package and assemble a bank loan application based upon information supplied by Defendants.

3.     Plaintiffs entered into a Fee Agreement with Defendant, Michael Prozer, to obtain financing for his companies, xchangeAGENT, Inc. and XA Worldwide, Inc.  See, copy of Fee Agreement attached hereto as Exhibit "A".

4.     Defendant, Michael Prozer presented a letter to Plaintiff from Wachovia Bank, NA stating that he had in deposit with that Defendant in excess of $21,000,000.00 to serve as collateral.  A copy of which is attached hereto as Exhibit "B"

3

5.   Defendant Michael Prozer also represented a deposit account at Smith Barney Investments in the amount of $145,000,000.00.

6.   In reliance upon Defendant Prozer's collateral representations, Plaintiff, Hosch arranged acceptable and accepted financing totaling $3,000,000.00 from The Park Avenue Bank in Valdosta, Georgia.

7.   The deposit accounts of Defendant Michael Prozer and/or his companies may be fraudulent and do not exist now at the said depository, to our best belief and knowledge.

8.   In exchange for services, Plaintiff, Cherokee Investments, LLC was to receive 10,000 shares of xchangeAGENT, Inc. stock, which was never transferred, and Plaintiff, Centre Equities, Inc. was to receive a loan origination fee for the loan in the amount of $1,000,000.00 which was never paid.

9.   Defendant Hosch and/or his companies paid to Defendant Prozer and his companies $82,500.00 for and in exchange for 892 shares of stock of xchangeAGENT, Inc., which stock has never been issued and it is believed that Defendants never had any intention of issuing said stock. The business of the Defendant xchangeAGENT, Inc. is primarily point of sale, mobile devices and software. See, copies of checks attached hereto as Exhibit "C" and Stock Purchase Agreement/Capital Return Agreement attached as Exhibit "D".

10.  Plaintiffs have received no meaningful disclosure of facts which would meet the standards of 10B5 of the Securities Act of 1933, as amended, and as a result have lost the value of the entire investment.

11.  The stock was not subject to an effective registration under the Act.

4

12.   The stock purchase is subject to damages claims or complete rescission under the Act, aforesaid at the election of the Plaintiff.

13.   On September 4, 2008, Mr. Prozer and/or others signed a note with The Park Avenue Bank in Valdosta Georgia in the amount of $3,000,000.00.

14.   As part of the agreement, Mr. Hosch was required to sign a personal guarantee for the Defendants note with The Park Avenue Bank which was to mature on December 4, 2008. See, copy of Guarantee attached as Exhibit "E".

15.   On or before September 4, 2008 Defendant Prozer requested additional financing in the amount of $300,000.00. Plaintiff, E. John Hosch sent via wire transfer the requested sum on October 6, 2008 with the agreement that it would be re-paid on the maturity date of The Park Avenue Bank Loan, December 4, 2008.

16.   Defendant Prozer acknowledged the obligations by making a partial payment to Brian Hosch in the amount of $150,000.00 against the fee agreement.

17.   On December 9, 2008, Defendant Prozer and/or his companies, xchangeAGENT, Inc. and XA Worldwide, Inc. initiated or made it seem to initiate a wire transfer of funds sufficient to retire The Park Avenue Bank loan in full with all interest ($3.5 million). To date, the said wire transfer has never been received by The Park Avenue Bank and cannot be determined to be genuine. See copy of wire transfer instructions attached hereto as Exhibit "F".

18.   Defendants failed to repay the loan on or before the maturity date.

19.   Plaintiffs and The Park Avenue Bank materially changed their financial positions by Guaranteeing and making a $3 million dollar and a $300,000.00 dollar loan to Defendants based upon false and misleading information that each reasonably believed to

5

be true, found to be false and have incurred damages to date of approximately $3,385,500.00 or so much as will be been proven at trial, plus interest, costs, and attorneys fees. The Park Avenue Bank and Plaintiffs herein have been the victims of an elaborate fraud and/or very sloppy banking practices.

20.    Defendants and The Park Avenue Bank each were shown evidence of the existence of accounts in the name of Defendant Prozer and/or his companies totaling $145,000,000.00 at Smith Barney Investments apparently in an effort to delay actions against Defendants Prozer, xchangeAGENT, Inc. and XA Worldwide, Inc., and AA&M Holdings, LLC.

21.    Plaintiffs have suffered damages, in an amount to be proven at the trial of this matter as a direct result of Defendants' breach of its contract with Plaintiffs herein.

       WHEREFORE, Plaintiffs pray for judgment against Defendants as more fully set for the below.

## COUNT II

### Unjust Enrichment - Constructive Trust

22.    Plaintiffs hereby incorporate all of the allegations contained in paragraphs 1 through 21 and further allege:

23.    In addition to the $3 million loan from The Park Avenue Bank secured by Plaintiffs, Defendants Prozer, xchangeAGENT, Inc., XA Worldwide, and AA&M Holdings, LLC, have been paid or received $382,500.00.

24.    The use of the above-referenced proceeds constitutes an unjust enrichment at the expense of Plaintiffs.

25.    As a result of the unjust enrichment of Defendants, Plaintiffs have been damaged in an amount in excess of $3,382,500.00.

6

26.   Defendants should be required to disgorge the unjust enrichment and any proceeds, purchases and substitutes thereof.

27.   By reason of the fraudulent and otherwise wrongful manner in which the Defendants induced Plaintiffs to secure a bank loan and purchase stock, which stock has never been transferred to Plaintiffs, they have no legal or equitable right, claim or interest therein, but, instead, Defendants, Michael Prozer, xchangeAGENT, Inc, XA Worldwide, and AA&M Holdings, LLC are involuntary trustees owning said property and profits therefrom in constructive trust for the benefit of Plaintiffs, *in toto*.

28.   Plaintiffs are entitled to a constructive trust over the assets of Defendants Michael Prozer, xchangeAGENT, Inc., XA Worldwide, Inc. and AA&M Holdings, LLC and to have a lien placed upon all real personal property in the determined amount owed.

WHEREFORE, Plaintiffs pray for judgment against Defendants as more fully set for the below.

<b>COUNT III</b>

<b><u>Breach of Contract:  The Hosch Loan</u></b>

29.   Plaintiffs hereby incorporate all of the allegations contained in paragraphs 1 through 21 and 23 through 28 and further allege:

30.   On or about August 8, 2008 Plaintiffs entered into a Fee Agreement contract with Defendants.

31.   Defendants materially breached its contract with Plaintiffs by:

    (a)  misrepresenting material facts regarding collateral in an effort to entice Plaintiffs to provide funding;

7

    (b)  failing to issue the shares of xchangeAGENT, Inc. stock as called for in the Stock

          Purchase/Capitol Return Agreement for $82,500.00;

    (c)  failing to repay $3,000,000.00 loan to The Park Avenue Bank on or before the

          maturity date, December 4, 2008.

    (d)  failing to repay the $300,000.00 loan to Plaintiff E. John Hosch on or before the

          maturity date, December 4, 2008.

    (e)  failing to repay $82,500.00 on or before the maturity date, December 4, 2008.

32.     Plaintiffs have performed all of their obligations and satisfied all conditions for which

they were responsible under the Stock Purchase/Capital Return Agreement with

Defendants except for those conditions and obligations that were excused or otherwise

discharged.

33.     Hosch made the $300,000.00 loan to Defendant Prozer in reliance upon information now

believed to be false and as a result thereof Plaintiff Hosch has incurred interest expense,

damage to his personal credit, damage to his on-going financing of his own projects and

new opportunities, plus interest charges, costs and attorneys fees.

34.     Plaintiffs have become indebted, incurred interest, have been threatened with suit and

have suffered damages in an amount to be proven at the trial of this matter, as a direct

result of Defendants' breach of its contract with Plaintiffs herein.

     WHEREFORE, Plaintiffs pray for judgment against Defendants as more fully set for the

below.

8

## COUNT IV

### Breach of Contract by Defendant, Wachovia Bank, NA

35.   Plaintiffs hereby incorporate all of the allegations contained in paragraphs 1 through 21,

23 through 28, and 30 through 34 and further allege:

36.   Wachovia Bank, NA materially breached the Account Control Agreement entered into on

September 4, 2008 between Wachovia Bank, NA ("Depository Bank"), The Park Avenue

Bank ("Lender"), and Defendant xchangeAGENT, Inc. ("Borrower").

37.   Under the Account Control Agreement, Wachovia was only to release the

$21,000,000.00, ostensibly held by Wachovia by or on behalf of Defendant Prozer and/or

his companies, to The Park Avenue Bank, a creditor of Prozer and or his companies.  On

information and belief, on the release date, Wachovia made no effort to release the funds

as agreed but rather allowed the funds to be transferred outside of the United States to

First Caribbean International Bank or elsewhere outside of the United States.

38.   Plaintiffs have suffered damages, in an amount to be proven at the trial of this matter, as a

direct result of Defendant, Wachovia Bank, NA's breach of the Account Control

Agreement.  See, copy of Account Control Agreement attached hereto as Exhibit "G".

WHEREFORE, Plaintiffs pray for judgment against Defendant Wachovia Bank, NA as

more fully set for the below.

## COUNT V

### Accounting

39.   Plaintiffs hereby incorporate all of the allegations contained in paragraphs 1 through 21,

23 through 28, 30 through 34, and 36 through 38 and further allege:

9

40.     Defendants have failed and refused to provide Plaintiffs with any documentation
regarding the use of the proceeds of The Park Avenue Bank Loan, The $300,000.00 loan
from Plaintiff E. John Hosch, and the $82,500.00 for the purchase of xchangeAGENT,
Inc. stock.

41.     Defendants have a duty to provide such documentation.

42.     Plaintiffs seek a Court Order commanding Defendants give an accounting of all
information and documentation concerning the use of the above-referenced funds.

WHEREFORE, Plaintiffs pray for judgment against Defendants as more fully set for the below.

## COUNT VI

### Sale of Unregistered Stock

43.     Plaintiffs hereby incorporate all of the allegations contained in paragraphs 1 through 21,
23 through 28, 30 through 34, 36 through 38, and 40 through 42 and further allege:

44.     Defendant Hosch and/or his companies paid to Defendant Prozer and his companies
$82,500 for and in exchange for stock of xchangeAGENT, Inc., which stock has never
been issued and it is believed that Defendants never had any intention of issuing said
stock.

45.     Defendants received no meaningful disclosure of those facts which would meet the
standards of 10B5 of the Securities Act of 1933, as amended and as a result has lost the
value of the entire investment.

46.     The stock was not subject to an effective registration under the Act.

47.     The stock purchases are subject to a claim for damages and/or complete rescission under
the Act, aforesaid at the election of the Plaintiff.

48.   Plaintiffs have suffered damages, in an amount to be proven at the trial of this matter, as a

direct result of Defendants sale of unregistered stocks.

WHEREFORE, Plaintiffs pray for judgment against Defendant Wachovia Bank, NA as

more fully set for the below.

## CONCLUSION

WHEREFORE, Plaintiffs pray for judgment against the Plaintiffs as follows:

a.   For a declaration that all real and personal property of Defendant Michael A.

Prozer, III and xchangeAGENT, Inc. be held in the determined amount owed as

constructive trustees for the benefit of Plaintiffs;

b.   For judgment against defendants, jointly and severally, in an amount to be proven

at trial;

c.   An accounting of all funds;

d.   For reimbursement of all costs of litigation including attorney's fees and accrued

interest;

e.   For such other and further relief as this Honorable Court deems just and proper.

Joel S. Wadsworth, Esq.
Georgia Bar # 730000
The Wadsworth Firm
2625 Piedmont Rd #56-304
Atlanta GA 30324
(404) 261 2122 Telephone
(404) 875 0784 Fax
jsw@joelwadsworth.com

*Counsel for Plaintiffs*

11

## VERIFICATION

I, E. John Hosch, being duly sworn, under penalty of perjury, deposes and says that I have read the foregoing pleading to be filed and the facts stated therein are from first hand knowledge and are true and correct to the best of my knowledge and belief.

I further depose while sworn and under penalty of perjury, that all Exhibits that are true and correct copies of the original documents they represent.

I further depose that a claim exists against Defendant Michael A. Prozer, III whom service is to be made.  He is a necessary and proper party to this action.

I further depose that Defendant Michael A. Prozer, III resides outside the State of Georgia and his present whereabouts is unknown.

Defendants previously resided in the State of Florida.  He has in fact provided this Plaintiff with four (4) previous addresses:

|                                  |                                  |
|----------------------------------|----------------------------------|
| 1753 Ripley Run                  | 9400 Laws Road                   |
| Wellington, Florida 33414        | Clermont, Florida 34714          |
|                                  |                                  |
| 5010 West Carmen Street          | 4221 West Spruce Street          |
| # 2130                           | Suite 1316                       |
| Tampa, Florida 33609             | Tampa, Florida 33607             |

Plaintiff cannot be certain that Defendant Michael A. Prozer, III resides at any of the above-referenced addresses.

Plaintiff does not know the present place of residence of Defendant Michael A. Prozer, III.

Plaintiff does not know and has never been informed and has no reason to believe that the Defendant Michael A. Prozer, III now resides in the State of Georgia.

This 24th day of March, 2009.

E. JOHN HOSCH

Subscribed and sworn to before me,
this 24th day of March, 2009.

Notary

My Commission Expires: 5-28-2010

# EXHIBIT A

# FEE AGREEMENT

# Centre Equities, Inc.

4463 Cherokee Street
Suite A
Acworth, GA 30101

770.434.4343
Fax 770.434.2009

Mr. Michael Prozer
xchangeAgent, Inc.
9400 Laws Road
Clermont, FL  34714-9262
Via Email: Michael.prozer@xchangeagent.com

Dear Michael,

Attached is our Fee Agreement.  As soon as this is signed and emailed back I'll send the bank letter.

Please tell me your availability for a conference call today or tomorrow.  I want to arrange a call between you, the Wachovia Banker, the Lending Bank, Brian and me, at your earliest convenience.

The banker said that if you can get your financials, tax returns and company financials to him early next week, we could close next Friday.

Sincerely,

H. John Hosch

## TERM SHEET AND AGREEMENT
### August 7, 2008

This Term Sheet and Agreement ("Agreement") is entered into by and between Xchange Agent, its principals, members, partners, officers, entities, successors, assigns and nominees (collectively "BORROWER") and, Centre Equities Inc (CEI) a Georgia corporation of 4463 Cheorkee Street, Suites 200, Acworth, Georgia 30101, its successors, assigns and nominees ("CEI").

### WITNESSETH

WHEREAS, BORROWER desires to have CEI arrange a commercial loan against the funds held by Wachovia to be transferred to the lending bank that issued CEI a financing proposal on the subject collateral dated August 7, 2008 ("LENDER"),

WHEREAS, BORROWER desires to borrow on the following terms or on other terms acceptable to BORROWER:

| | |
|---|---|
| Loan Amount: | $18,000,000 |
| Purpose: | To provide operating line of credit for Xchange Agent |
| Fees: | Origination fee of $1,000,000 due and payable at closing |
| Term: | 12 month interest due quarterly |
| Rate: | 2.50% over 12-month Certificate of Deposit |
| Collateral: | Certificate of Deposit in the amount of $21,000,000+ |
| Guarantors: | Mr. Michael Prozer |

WHEREAS, CEI is in the business of arranging commercial real estate financing and other type of loans, and has or will attempt to obtain a Loan Proposal ("Loan Proposal") from LENDER with substantially the above terms or on other terms acceptable to BORROWER.

NOW THEREFORE, in consideration of the mutual promises and undertakings hereinafter expressed, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

Page 2
Agreement
CEI

August 7, 2008

1.  BORROWER agrees to pay to CEI at closing of the loan $1,000,000 and 10,000 shares of non-delutable Xchange Agent stock. This Agreement shall serve as an Irrevocable Letter of Direction to LENDER and the escrow agent handling the loan closing to disburse CEI's fee in the amount described above out of the first available proceeds of loan.  LENDER, its escrowee or agent shall wire transfer funds to CEI's account on the same day of first loan disbursement.  Should loan, in conformance with LENDER's Loan Proposal or subsequent Loan Commitment accepted by BORROWER, not close at no fault of LENDER, CEI's fee shall be deemed earned and immediately payable to CEI by BORROWER.  However, if LENDER defaults on the terms and conditions of the accepted loan commitment or LENDER elects to not close the loan after review of due diligence information submitted by BORROWER, then CEI shall not be paid its fee as described above.

2.  CEI shall use its best efforts to assist BORROWER in securing and closing requested financing.

3.  BORROWER hereby authorizes CEI and LENDER to conduct credit checks on all principals and entities involved in the making of this loan. BORROWER also agrees to furnish all documents as CEI, LENDER and/or LENDER's legal counsel considers necessary to consummate the transaction contemplated herein.

4.  This Agreement shall be governed by the state laws of Georgia and a signed facsimile or e-mail shall be deemed an original copy.

5. This Agreement will constitute the entire agreement between CEI and BORROWER relating to the loan. Any and all prior Agreements, agreements, representations, and warranties made by CEI or BORROWER, whether oral or written, will be deemed superseded upon the signing of this Agreement. No extension, amendment, or waiver of the Agreement shall be valid or enforceable unless it is made in writing and signed by both CEI and BORROWER. In the event that any one or more of the provisions contained in this Loan Agreement or any other Loan Document shall, for any reason, be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions in this Loan Agreement or such other Loan Document.

Page 3
Agreement
CEI

August 7, 2008

 

 

 

       IN WITNESS WHEREOF, the above parties have executed this Agreement on the day
and year first above written.

BORROWER:

by_____   Date ___/___/___

Centre Equities Inc.

by _____   Date 8.7.08
E. John Hosch, President

# EXHIBIT "B"

# WACHOVIA LETTER



Wachovia Bank, N.A.

Tel
Fax



**WACHOVIA**

07/22/2008

Mr. Michael Prozer
XchangeAGENT Inc.
4221 West Spruce Street
Suite 1316
Tampa FL 33607

Dear Mr. Prozer:

We are pleased to inform you that your deposit of $21,236,923.42 with funds originating from Colombia, South America has been cleared by Homeland Security and have satisfied regulations under the Patriot Act. XchangeAGENT has complied with all requirements to clear this transaction.

Wachovia Bank's policy for a client who does not have a history of depositing funds of this size from international sources is to hold them for a period not to exceed ninety days. There are no encumbrances, liens or secondary parties who have claims on all or part of these funds. Wachovia will, therefore, unconditionally release the above referenced funds upon the release of the hold. Wachovia Bank can, at the instruction of xchangeAGENT, place a secondary party as a Joint Control Representative who can be placed as a beneficiary to the above referenced funds.

Your account has been placed on reserve. At this time, interest on the account cannot be accrued until the funds are released to your account. The reserve will guarantee the protection of your funds from any issues that may arise.

We thank you for banking with Wachovia and look forward to serving your banking needs.

Sincerely,

**EXHIBIT "C"**

**COPY OF CHECKS**



| Centre Equities Inc. | | | 1558 |
| --- | --- | --- | --- |
| xchangeAgent, Inc. | | 8/1/2008 | |
| Stock Purchase | stock purchase | | 62,500.00 |

| 1-NW BANK | Stock Purchase | | 62,500.00 |
| --- | --- | --- | --- |



MEMO   Stock Purchase

⑈00⅃590⑈ ⑆061120385⑆ 11005801⑈

Centre Equities Inc.
xchangeAgent, Inc.
Stock Purchase

stock purchase                    8/28/2008          1590

                                                      20,000.00

1-NW BANK            Stock Purchase

                                                      20,000.00

# EXHIBIT "D"

# STOCK PURCHASE/CAPITAL CONTROL AGREEMENT

# STOCK PURCHASE/CAPITAL RETURN AGREEMENT

THIS STOCK PURCHASE AGREEMENT (this "Agreement") is made this _30___ day of _JULY___, 2008, by xchangeAGENT Inc. a Florida corporation (the "Company") and _____John Hosch _____, residing at 231 Jim Knight Rd, Cartersville, GA 30121. (the "Investor") and provides as follows.

### RECITALS:

Investor desires to purchase, and Company desires to sell  on behalf of a current shareholder, shares of the stock of the Company (the "Shares") upon the terms and provisions set forth in this Agreement.

### AGREEMENT:

NOW, THEREFORE, in consideration of the foregoing recitals and the mutual agreements, covenants and conditions contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the parties, Company and Investor agree as follows:

1.      **Purchase and Sale of Shares.**

(a)     **Share Price.** The Company agrees to sell, and the Investor agrees to buy, 650 (.65% ownership) shares of the Companies common stock, par value. The combined purchase price is $62,500.00  payable in the manner of a wire transfer prescribed by the with the attached wire instructions for the Company and or agent managing the transaction at Closing.

2.      **Representations and Warranties of Company.** Company, jointly and severally, represent and warrant to Investor as follows:

(a)     **Organization and Standing of Company.** The Company is a corporation duly organized, validly existing, and in good standing under the laws of the State of Florida, with full power and authority to own its properties and to carry on the businesses presently conducted by it. The Company is duly qualified to do business and is in good standing in every jurisdiction in which the nature of its business or the character and location of its properties makes qualification necessary.

(b)     **Stock of Company.** Pursuant to its Articles of Incorporation, as amended, the Company is authorized to issue __1,000,000__ shares of common stock. ____100,000_____ shares of Company stock are issued and outstanding, fully paid, and non-assessable. There are no other authorized or outstanding equity securities of the Company of any class, kind, or character. There are no outstanding subscriptions, options, warrants, or other

agreements or commitments obligating the Company to issue additional shares of its capital stock of any class, or any securities convertible into any shares of stock of any class.

(c)  Stockholders of Company.  The following persons are the sole legal and beneficial owners of all of the issued and outstanding shares of capital stock of the Company and own the following shares:

| Name | Number of Shares |
|------|------------------|
| Existing Shareholders* | 24,042 |
| Michael Prozer | 46,050 |
| Colin Shaw | 29,908 |

Shares to shareholder will come from a private existing shareholder, Shares will not dilute from other existing shareholders.

The Shares are, and will be transferred to Investor on the Closing Date, free and clear of all liens, encumbrances, pledges, and claims of any type whatsoever. Company has and/or shall have on the Closing Date the full right to transfer, assign, and deliver the Shares to Investor. Upon the closing of the transactions, the Investor(s) shall own _650_ shares combined of the authorized and issued common stock of the Company. This equates to .650% ownership

(d)  Subsidiaries of Company.  The Company has no subsidiaries.

(e)  Absence of Undisclosed Liabilities of Company.  The Company has no other liabilities or obligations of any nature, whether absolute, accrued, contingent, or otherwise and whether due or to become due. Neither does Company know or have any reasonable ground to know of any basis for an assertion against the Company as of the date of this Agreement, of any liability of any nature or in any amount.

(f)  Assets of Company.  The Company has good, marketable, and indefeasible title to all its assets. The Company's tangible personal property is in good working order and condition, ordinary wear and tear expected, and is suitable for use in the business of the Company.

(g)  Obligations of Company.  The Company has in all respects performed all obligations required to be performed by it and is not in default or violation of any agreements, leases, or other documents or orders, writs, or decrees of any court, agency, or other instrumentality, to which it is a party or by which it is bound.

2

(h)    **Litigation.** There is no litigation, proceeding, or investigation pending, or to the knowledge of the Company threatened against the Company or against the Company, which: (i) might result in any adverse change in the Company's business, financial condition, or assets; (ii) challenges the Company' ownership of the Shares; or (iii) challenges the validity of any action taken or to be taken by the Company pursuant to or in connection with any provisions of this Agreement. The Company does not know or have any reasonable ground to know of any basis for any such litigation, proceeding, or investigation. There is no litigation of any type filed against the Company.

(i)    **Governmental Regulation of Company.** The Company has all consents, approvals, licenses, permits, zoning approvals, conditional use permits, utility service agreements, environmental permits, and final certificates of occupancy (the "Permits") of any level of government or any board, agency, department, or official that are necessary for the lawful conduct of its business. The Company complies in all respects with all applicable federal, state, city, or county laws, ordinances, or regulations applicable to its business, including without limitation all zoning laws, building codes, use regulations, plans of development, and environmental laws, and no expenditures, capital or otherwise, are needed to be in such compliance. There are no judgments or injunctions, pending or threatened, that relates to, limit, or affect the Company's business. All Permits that the Company is required to obtain and keep in force for the continued lawful operation of its business will not be suspended, revoked, or otherwise adversely affected by the transactions contemplated by this Agreement. The Company have not received any notice nor do the Company have any knowledge that any of the Permits issued to the Company have been canceled, withdrawn, or modified or that any such action is contemplated or threatened by any person, entity, governmental body or board, agency, department, or official thereof.

(j)    **Company Taxes.** The Company has filed accurately and in correct form all tax returns required by law, and all franchise, Social Security, withholding, real and personal property tax, sales and use tax, and all other returns that are required to be filed. The Company has paid all taxes required to be paid by it. No audit of any taxing authority (including without limitation, the Internal Revenue Service) is currently being conducted, nor is any such audit pending or threatened with respect to the Company.

(k)    **Corporate Loans.** The Company does not have any loans or other obligations payable to any of its officers, directors, employees, or stockholders. None of the Company's officers, directors, employees, or stockholders has any loans or any other obligations payable to the Company.

(l)    **Union.** No employee of the Company is a member of a union. Neither Company has any knowledge of any effort proposed to unionize the employees of the Company.]

3

(m)     **Validity.** This Agreement, when executed by both the Company and Investor, shall constitute a legal, valid, and binding obligation of each of the Company and shall be enforceable by Investor or Company in accordance with its terms, except as may be limited by bankruptcy, insolvency, or other similar laws affecting the enforcement of creditors' rights in general or by general principles of law or equity.

(n)     **Disclosure.** No representation or warranty by Company contained in this Agreement and no written statement furnished or to be furnished to Investor pursuant hereto or in connection with the transactions contemplated hereby, contains or will contain any untrue statement of a material fact or omits or will omit to state a material fact necessary in order to make the statements contained herein or therein not misleading or necessary in order to provide the Investor with proper and accurate information as to the Shares or the Company's financial condition or assets.

(o)     **Company' Compliance.** The execution and delivery to Investor of this Agreement and the transactions contemplated hereby will not violate or cause a default or result in the acceleration of any obligations under any license, permit, authorization, grant, contract, note, deed of trust, agreement, lease, covenant, or other document or writ, decree, order, or regulation to which Company, or either of them, or the Company, is a party or bound.

(p)     **Qualification.** All of the foregoing representations and warranties are made by the company to the best of their knowledge.

3.     **Representations and Warranties of Investor.** Investor represents and warrants to Company that:

(a)     **Identity.** Investor is a natural person and resident of the United States of America.

(b)     **Investor's capability.** Buyer is (ii) experienced in making investments of the kind contemplated by this Agreement, (iii) capable, by reason of its business and financial experience, of evaluating the relative merits and risks of an investment in the Securities, and (iv) able to afford the loss of its investment in the Securities.

(c)     **Purchase for Investment.** Investor is acquiring the shares described herein for investment and not with a view to resale or distribution. Investor covenants not to take any action in connection with the purchase of the shares described herein that would cause the Company to be in violation of federal or state securities laws.

4

4.      **Conditions to Obligations of Investor.** The obligations of Investor to complete the transactions provided for herein shall be subject, at its election, to the following conditions:

(a)      Investor shall have obtained financing for the Purchase Price on terms satisfactory to Investor, in its sole discretion, which financing must be actively and diligently pursued by Investor.

(b)      Company shall have performed all agreements required to be performed hereunder by any of them on or before the Closing Date.

(c)      All representations and warrants of the company contained in this agreement shall be true and correct, on or within 30 days after the Closing Date in all respects as though made on and as of the Closing Date.

(d)      From the date of this Agreement to the Closing Date, there shall not have been any adverse change in the Company's financial condition, assets, liabilities, or business other than changes in the usual and ordinary course of business or any damage, destruction, liability or loss, whether or not covered by insurance, from any cause whatsoever including but not limited to fire, condemnation proceeding, accident, or act of God adversely affecting the Company's assets or business, or any part thereof.

(e)      On the Closing Date, no suit, action, or other proceeding shall be pending or threatened before any court or other governmental agency against Company, or either of them, or the Company in which damages or other relief in connection with the Company's business or in connection with this Agreement or the consummation of the transactions contemplated herein are sought.

(f)      On or within 30 days after the Closing Date, Company shall deliver or cause to be delivered to Investor the following: (i) one or more stock certificates representing the Shares, which shall be duly endorsed or accompanied by a stock power duly executed in proper form to transfer; (ii) a written certificate from the Company addressed to Investor, in form and substance satisfactory to Investor at its sole discretion, certifying that the representations set forth in section 2 above are true and correct and the Company have complied in all respects with the provisions of Sections 4 hereof, (iii) an opinion of Company' counsel addressed to Investor, in form and substance satisfactory to investors counsel, dated as of the date of delivery; and (iv) such other documents as may reasonably be requested by Investor.

5

5.      Intentionally Blank

6.      Intentionally Blank

7.      **Conditions to Obligations of Company.** The obligations of Company to complete the transactions provided for herein shall be subject to the following conditions:

(a)      Investor shall have delivered to Company on the Closing Date a wire transfer in the amount of the Purchase Price, subject to any adjustments described in Section 1 above.

8.      **Covenant Not To Compete.** Each Company covenants and agrees as follows:

(a)      **Non-Compete.** For a period of 2 years following the Closing Date (the "Restricted Period"), the Investor shall not, without the prior written consent of Company, directly or indirectly engage in or be interested in any corporation, firm, or other enterprise that is engaged in business software in the Restricted Area (defined below). The term "Restricted Area" shall mean North, Central and South America. The Investor shall be deemed to be directly or indirectly interested in a corporation, firm, or other enterprise if they are involved in such enterprise as an owner, principal, agent, employee, partner, consultant, investor, stockholder, trustee, creditor, director, or officer in a role that would compete with the Company. The covenants contained herein shall not preclude the Investor from becoming the holder of any stock or other ownership interest of a publicly-traded company provided they do not separately or in the aggregate directly or indirectly through a related party or affiliate acquire an ownership interest in excess of 10 percent of such company.

(b)      **Non-Circumvention.** During the Restricted Period, the Investor shall not, directly or indirectly, call upon or contact any employee or other agent of the Company for the purpose of employing, contracting with, or seeking to employ or contract with such employee or other agent, or inducing such employee or other agent to discontinue employment or service with the Company.

(c)      **Remedies.** A remedy at law for any breach or threatened breach of this Section will be inadequate by its nature. If the Investor violates or threatens to violate any of the provisions of this Section, Company shall be entitled to injunctive relief against Investor to enforce the provisions of this Section as well as any other remedies available at law or in equity.

6

(d)    **Judicial Modification.** The geographical area, activity, and time period restrictions imposed upon each Company are fair and reasonably required for the protection of the Company. However, if a court of competent jurisdiction shall refuse to enforce all of the separate covenants of this Section, then such unenforceable covenants shall be separated from the provisions hereof to the extent necessary to permit the remaining covenants to be enforced. In the event a court of competent jurisdiction determines that the geographical area, activity, or time period restrictions exceed whatever standards that the court deems enforceable, then such restrictions shall be reformed by such court and be applicable for such lesser geographical area, activity, or time period, as the case may be. The parties agree to be bound by such judicial modification with the same force and effect as if such modification were contained in this Section in the first instance.

9.    **Indemnification.**

(a)    Company, jointly and severally, agree to and do hereby indemnify and hold harmless Investor, with respect to any claims, losses, obligations, liabilities, costs and expenses, including reasonable attorney fees, incurred or accrued by reason of (i) any material misrepresentations or omissions by Company, or any of them, or (ii) any breach of any warranty, covenant, term, or condition by Company, or any of them, contained in this Agreement or any instrument executed pursuant to this Agreement.

(b)    Investor agrees to and does hereby indemnify and hold harmless Company, with respect to any claims, losses, obligations, liabilities, costs and expenses, including reasonable attorney fees, incurred or accrued by reason of (i) any material misrepresentations or omissions by Investor, or (ii) any breach of any warranty, covenant, term or condition by Investor contained in this Agreement or any instrument executed pursuant to this Agreement.

10.    **Survival of Representations and Warranties.** All of the respective representations, warranties, covenants, agreements, and indemnifications of Company and each of them contained herein shall survive the Closing Date.

11.    **Closing.** The closing shall take place on _____, on __July 31 _____, ____ at ____10:00__ a.m., current local time, or at such earlier date as the parties can mutually agree. The date, time, place, and actions fixed in accordance with the provisions of this Section are herein called the "Closing Date."

7

12.      **Termination.** This Agreement may be terminated or cancaled, with the attendant release of all liabilities or obligations hereunder between the parties, except the indemnification provided for in Section 9 above.

(a).      By mutual agreement of the parties at any time before the Closing Date; or

(b)      By Investor upon written notice to Company, if (i) any of the representations and warranties of Company or either of them contained herein shall prove to be inaccurate in any respect; (ii) any obligation to be performed by Company or either of them hereunder has not been performed during the period or at or before the time specified herein for such performance; or (iii) any condition to the obligation of Investor to complete the transaction provided for herein shall not have been satisfied or complied with by or within 30 days after the Closing Date; or

(c)      By Company upon written notice to Investor, if (i) any of the representations and warranties of Investor contained herein shall prove to be inaccurate in any respect; (ii) any obligation to be performed by Investor hereunder has not been performed during the period or at or before the time specified herein for such performance; or (iii) any condition to the obligation of Company to complete the transaction provided for herein shall not have been satisfied or complied with by or within 30 days after the Closing Date; or

(d)      By any party upon written notice to the other if the closing has not occurred by August 1, 2008.

13.      **Expenses.** Company shall pay their own expenses and costs including, without limitation, their respective separate counsel fees in connection with this Agreement and the transactions contemplated hereby. Investor shall pay its expenses and costs including, without limitation, its separate counsel fees in connection with this Agreement and the transactions contemplated hereby.

14.      **Assignment.** This Agreement may not be assigned by any party without the written consent of the remaining parties.

15.      **Additional Documents.** Company, jointly and severally, at any time and from time to time after the Closing Date, upon request of Investor, will do, execute, acknowledge, and deliver all such further acts, deeds, assignments, transfers, conveyances, powers of attorney, and

8

assurances as may be required to convey, transfer to, and vest in the Investor and protect the Investor's right, title, interest in, and enjoyment of, the Shares and the Company's assets and business.

16.    **Effect of Agreement.** This Agreement sets forth the entire understanding of the parties and supersedes any and all prior agreements, arrangements, and understandings relating to the subject hereof. No representation, promise, inducement, or statement of intention has been made by any of the parties that is not embodied in this Agreement, and none of the parties shall be bound by, or be liable for, any alleged representation, promise, inducement, or statement of intention not embodied herein. This Agreement shall be binding upon and inure to the benefit of the parties and their respective heirs, legal representatives, successors, and assigns. The section headings in this Agreement are for convenience of reference only and do not in any way modify, interpret, or construe the intentions of the parties. This Agreement may be executed in one or more counterparts, each of which shall be an original and all of which together shall constitute one and the same instrument. When the context in which words are used in this Agreement indicates that such is the intent, words in the singular number shall include the plural and vice-versa, and words in a specific gender shall include all other genders.

17.    **Governing Law.** This Agreement was made under the laws of the State of Florida, and for all purposes shall be construed and enforced in accordance with the substantive laws of said state.

18.    **Notices.** Any notice, report, demand, waiver, or consent required or permitted hereunder shall be in writing and shall be given by prepaid certified mail, return receipt requested, addressed as follows:

(a)    If to Company:

1753 Ripley Run

Wellington, FL  33414

(b)    If to Investor:

_____

_____

_____

9

The date of any such notice and of mailing thereof shall be deemed to be the day of delivery. The address of any party may be changed for the purposes of notice by giving notice as provided above.

19.     Exit. Company shall perform a capital return within 30 days of the initial dividend. The balance after the initial dividend will be less the amount issued from the dividend. Full capital return will be issued for the amount of $62,500.00 in the manor prescribed by the investor. Shares will be distributed in the names of:

John Hosch – 650 or the entity requested to be placed on the stock certificate.
Joint tenants with right of survivorship (JTWRS): E. John Hosch, Brian S. Hosch and John Eric Hosch

20.     Dividends. Dividends will be paid at an annual rate of 25% of Annual GROSS REVENUES.  Dividends will be paid out on a quarterly basis to the shareholders.  (Example: 5,000,000 in Annual Gross Revenues times .25% = $12,500 per each 1% of ownership divided by four)

21.     Non Voting. xchangeAGENT and its current officers hold the exclusive right to maintain full operational decision making and authority of the company. At no time shall share holders, outside of the companies officers have or hold such authority.

22.     Amendments. This Agreement cannot be changed or terminated orally, and no waiver of compliance with any provisions or condition hereof and no consent provided for herein shall be effective unless evidenced by an instrument in writing duly executed by the parties sought to be charged with such waiver or consent.

23.     Anti-Dilusion. This class of shares carries the same anti-dilusion rights as our first round of shares. In the event xchangeAGENT has a need to distribute additional shares, shareholder, under this agreement will maintain their percentage of shares and xchangeAGENT will have the obligation to issue more shares to maintain shareholders company owned percentage. Issuance of additional shares by xchangeAGENT will not dilute ownership of shareholder under this agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

xchangeAGENT Inc.

Company                                    Investor

10

# EXHIBIT "E"

# GUARANTY OF E. JOHN HOSCH

ACCOUNT #:311283411

The Park Avenue Bank
5 Points Office
3102 N Oak St Ext P O Box 3730

# GUARANTY

Valdosta _____ GA _____
          (City)                    (State)

SEPTEMBER 04, 2008

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to in-
duce **The Park Avenue Bank**
(herein, with its participants, successors and assigns, called "Lender"), at its option, at any time or from time to
time to make loans or extend other accommodations to or for the account of _____
**XCHANGEMENT INC., A FLORIDA CORPORATION**
(herein called "Borrower") or to engage in any other transactions with Borrower, the Undersigned hereby absolutely
and unconditionally guarantees to Lender the full and prompt payment when due, whether at maturity or earlier by
reason of acceleration or otherwise, of the debts, liabilities and obligations described as follows:

A. If this ☒ is checked, the Undersigned guarantees to Lender the payment and performance of the debt, lia-
bility or obligation of Borrower to Lender evidenced by or arising out of the following:  **Promissory Note**
**#311283411     In The Amount Of $2,999,995.00**  Dated **09/04/08**  and any extensions,
renewals or replacements thereof (hereinafter referred to as the "Indebtedness").

B. If this ☐ is checked, the Undersigned guarantees to Lender the payment and performance of each and
every debt, liability and obligation of every type and description which Borrower may now or at any time
hereafter owe to Lender (whether such debt, liability or obligation now exists or is hereafter created or
incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent,
primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such debts,
liabilities and obligations being hereinafter collectively referred to as the "Indebtedness"). Without limitation,
this guaranty includes the following described debt(s): _____

The Undersigned further acknowledges and agrees with Lender that:

1. No act or thing need occur to establish the liability of the Undersigned hereunder, and no act or thing, except
full payment and discharge of all Indebtedness, shall in any way exonerate the Undersigned or modify, reduce, limit
or release the liability of the Undersigned hereunder.

2. This is an absolute, unconditional and continuing guaranty of payment of the Indebtedness and shall continue
to be in force and be binding upon the Undersigned, whether or not all Indebtedness is paid in full, until this
guaranty is revoked by written notice actually received by the Lender, and such revocation shall not be effective as
to Indebtedness existing or committed for at the time of actual receipt of such notice by the Lender, or as to any
renewals, extensions and refinancings thereof. If there be more than one Undersigned, such revocation shall be
effective only as to the one so revoking. The death or incompetence of the Undersigned shall not revoke this
guaranty, except upon actual receipt of written notice thereof by Lender and then only as to the decedent or the
incompetent and only prospectively, as to future transactions, as herein set forth.

3. If the Undersigned shall be dissolved, shall die, or shall be or become insolvent (however defined) or revoke
this guaranty, then the Lender shall have the right to declare immediately due and payable, and the Undersigned
will forthwith pay to the Lender, the full amount of all Indebtedness, whether due and payable or unmatured. If the
Undersigned voluntarily commences or there is commenced involuntarily against the Undersigned a case under the
United States Bankruptcy Code, the full amount of all Indebtedness, whether due and payable or unmatured, shall
be immediately due and payable without demand or notice thereof.

4. The liability of the Undersigned hereunder shall be limited to a principal amount of $ **2,999,995.00**
(If unlimited or if no amount is stated, the Undersigned shall be liable for all Indebtedness, without any limitation as
to amount), plus accrued interest thereon and all attorneys' fees, collection costs and enforcement expenses
referable thereto. Indebtedness may be created and continued in any amount, whether or not in excess of such
principal amount, without affecting or impairing the liability of the Undersigned hereunder. The Lender may apply
any sums received by or available to Lender on account of the Indebtedness from Borrower or any other person
(except the Undersigned), from their properties, out of any collateral security or from any other source to payment
of the excess. Such application of receipts shall not reduce, affect or impair the liability of the Undersigned
hereunder. If the liability of the Undersigned is limited to a stated amount pursuant to this paragraph 4, any
payment made by the Undersigned under this guaranty shall be effective to reduce or discharge such liability only if
accompanied by a written transmittal document, received by the Lender, advising the Lender that such payment is
made under this guaranty for such purpose.

5. The Undersigned will pay or reimburse Lender for all costs and expenses (including reasonable attorneys' fees
and legal expenses) incurred by Lender in connection with the protection, defense or enforcement of this guaranty
in any litigation or bankruptcy or insolvency proceedings.

This guaranty includes the additional provisions on page 2, all of which are made a part hereof.

This guaranty is ☒ unsecured; ☐ secured by a mortgage or security agreement dated _____ ;
☐ secured by _____

IN WITNESS WHEREOF, this guaranty [ ... ] [executed by the Undersigned the day and year first above
written.]

Brian A. Harris _____          John Toml _____
Witness

Sue E. _____

Notary Public, State of Georgia
County of Paulding
My Commission Expires: MAY 18, 2010

"Undersigned" shall refer to all persons who sign the guaranty, severally and jointly.

## ADDITIONAL PROVISIONS

6. Whether or not any existing relationship between the Undersigned and Borrower has been changed or ended and whether or not this guaranty has been revoked, Lender may, but shall not be obligated to, enter into transactions resulting in the creation or continuance of indebtedness, without any consent or approval by the Undersigned and without any notice to the Undersigned. The liability of the Undersigned shall not be affected or impaired by any of the following acts or things (which Lender is expressly authorized to do, omit or suffer from time to time, both before and after revocation of this guaranty, without notice to or approval by the Undersigned): (i) any acceptance of collateral security, guarantors, accommodation parties or sureties for any or all indebtedness; (ii) any one or more extensions or renewals of indebtedness (whether or not for longer than the original period) or any modification of the interest rates, maturities or other contractual terms applicable to any indebtedness; (iii) any waiver, adjustment, forbearance, compromise or indulgence granted to Borrower, any delay or lack of diligence in the enforcement of indebtedness, or any failure to institute proceedings, file a claim, give any required notices or otherwise protect any indebtedness; (iv) any full or partial release of, settlement with, or agreement not to sue, Borrower or any other guarantor or other person liable in respect of any indebtedness; (v) any discharge of any evidence of indebtedness or the acceptance of any instrument in renewal thereof or substitution therefor; (vi) any failure to obtain collateral security (including rights of setoff) for indebtedness, or to see to the proper or sufficient creation and perfection thereof, or to establish the priority thereof, or to protect, insure, or enforce any collateral security; or any release, modification, substitution, discharge, impairment, deterioration, waste, or loss of any collateral security; (vii) any foreclosure or enforcement of any collateral security; (viii) any transfer of any indebtedness or any evidence thereof; (ix) any order of application or any payments or credits upon indebtedness; (x) any election by the Lender under §1111(b)(2) of the United States Bankruptcy Code.

7. The Undersigned waives any and all defenses, claims and discharges of Borrower, or any other obligor, pertaining to indebtedness, except the defense of discharge by payment in full. Without limiting the generality of the foregoing, the Undersigned will not assert, plead or enforce against Lender any defense of waiver, release, statute of limitations, res judicata, statute of frauds, fraud, incapacity, minority, usury, illegality or unenforceability which may be available to Borrower or any other person liable in respect of any indebtedness, or any setoff available against Lender to Borrower or any such other person, whether or not on account of a related transaction. The Undersigned expressly agrees that the Undersigned shall be and remain liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure of any mortgage or security interest securing indebtedness, whether or not the liability of Borrower or any other obligor for such deficiency is discharged pursuant to statute or judicial decision. The undersigned shall remain obligated, to the fullest extent permitted by law, to pay such amounts as though the Borrower's obligations had not been discharged.

8. The Undersigned further agrees that the Undersigned shall be and remain obligated to pay indebtedness even though any other person obligated to pay indebtedness, including Borrower, has such obligation discharged in bankruptcy or otherwise discharged by law. "Indebtedness" shall include post-bankruptcy petition interest and attorneys' fees and any other amounts which Borrower is discharged from paying or which do not otherwise accrue to indebtedness due to Borrower's discharge, and the Undersigned shall remain obligated to pay such amounts as though Borrower's obligations had not been discharged.

9. If any payment applied by Lender to indebtedness is thereafter set aside, recovered, rescinded or required to be returned for any reason (including, without limitation, the bankruptcy, insolvency or reorganization of Borrower or any other obligor), the indebtedness to which such payment was applied shall for the purposes of this guaranty be deemed to have continued in existence, notwithstanding such application, and this guaranty shall be enforceable as to such indebtedness as fully as if such application had never been made.

10. The Undersigned waives any claim, remedy or other right which the Undersigned may now have or hereafter acquire against Borrower or any other person obligated to pay indebtedness arising out of the creation or performance of the Undersigned's obligation under this guaranty, including, without limitation, any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any right to participate in any claim or remedy the Undersigned may have against the Borrower, collateral, or other party obligated for Borrower's debts, whether or not such claim, remedy or right arises in equity, or under contract, statute or common law.

11. The Undersigned waives presentment, demand for payment, notice of dishonor or nonpayment, and protest of any instrument evidencing indebtedness. Lender shall not be required first to resort for payment of the indebtedness to Borrower or other persons or their properties, or first to enforce, realize upon or exhaust any collateral security for indebtedness, before enforcing this guaranty.

12. The liability of the Undersigned under this guaranty is in addition to and shall be cumulative with all other liabilities of the Undersigned to Lender as guarantor or otherwise, without any limitation as to amount, unless the instrument or agreement evidencing or creating such other liability specifically provides to the contrary.

13. This guaranty shall be enforceable against each person signing this guaranty, even if only one person signs and regardless of any failure of other persons to sign this guaranty. If there be more than one signer, all agreements and promises herein shall be construed to be, and are hereby declared to be, joint and several in each of every particular and shall be fully binding upon and enforceable against either, any or all the Undersigned. This guaranty shall be effective upon delivery to Lender, without further act, condition or acceptance by Lender, shall be binding upon the Undersigned and the heirs, representatives, successors and assigns of the Undersigned and shall inure to the benefit of Lender and its participants, successors and assigns. Any invalidity or unenforceability of any provision or application of this guaranty shall not affect other lawful provisions and application hereof, and to this end the provisions of this guaranty are declared to be severable. Except as authorized by the terms herein, this guaranty may not be waived, modified, amended, terminated, released or otherwise changed except by a writing signed by the Undersigned and Lender. This guaranty shall be governed by the laws of the State in which it is executed. The Undersigned waives notice of Lender's acceptance hereof.

(page 2 of 2)

ACCOUNT #:311283411

The Park Avenue Bank
5 Points Office
3102 N Oak St Ext P O Box 3730

**GUARANTY**

Valdosta                                    GA
(City)                                      (State)

SEPTEMBER 04, 2008

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to induce The Park Avenue Bank
(herein, with its participants, successors and assigns, called "Lender"), at its option, at any time or from time to time to make loans or extend other accommodations to or for the account of _____
XCHANGEAGENT INC., A FLORIDA CORPORATION
(herein called "Borrower") or to engage in any other transactions with Borrower, the Undersigned hereby absolutely and unconditionally guarantees to Lender the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of the debts, liabilities and obligations described as follows:

    A. If this ☒ is checked, the Undersigned guarantees to Lender the payment and performance of the debt, liability or obligation of Borrower to Lender evidenced by or arising out of the following:  Promissory Note
#311283411   In The Amount Of $2,999,995.00   Dated 09/04/08 _____ and any extensions, renewals or replacements thereof (hereinafter referred to as the "Indebtedness").

    B. If this ☐ is checked, the Undersigned guarantees to Lender the payment and performance of each and every debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe to Lender (whether such debt, liability or obligation now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such debts, liabilities and obligations being hereinafter collectively referred to as the "Indebtedness"). Without limitation, this guaranty includes the following described debt(s): _____

The Undersigned further acknowledges and agrees with Lender that:

    1. No act or thing need occur to establish the liability of the Undersigned hereunder, and no act or thing, except full payment and discharge of all indebtedness, shall in any way exonerate the Undersigned or modify, reduce, limit or release the liability of the Undersigned hereunder.

    2. This is an absolute, unconditional and continuing guaranty of payment of the Indebtedness and shall continue to be in force and be binding upon the Undersigned, whether or not all Indebtedness is paid in full, until this guaranty is revoked by written notice actually received by the Lender, and such revocation shall not be effective as to Indebtedness existing or committed for at the time of actual receipt of such notice by the Lender, or as to any renewals, extensions and refinancings thereof. If there be more than one Undersigned, such revocation shall be effective only as to the one so revoking. The death or incompetence of the Undersigned shall not revoke this guaranty, except upon actual receipt of written notice thereof by Lender and then only as to the decedent or the incompetent and only prospectively, as to future transactions, as herein set forth.

    3. If the Undersigned shall be dissolved, shall die, or become insolvent (however defined) or revoke this guaranty, then the Lender shall have the right to declare immediately due and payable, and the Undersigned will forthwith pay to the Lender, the full amount of all Indebtedness, whether due and payable or unmatured. If the Undersigned voluntarily commences or there is commenced involuntarily against the Undersigned a case under the United States Bankruptcy Code, the full amount of all Indebtedness, whether due and payable or unmatured, shall be immediately due and payable without demand or notice thereof.

    4. The liability of the Undersigned hereunder shall be limited to a principal amount of $ 2,999,995.00 _____
(if unlimited or if no amount is stated, the Undersigned shall be liable for all Indebtedness, without any limitation as to amount), plus accrued interest thereon and all attorneys' fees, collection costs and enforcement expenses referable thereto. Indebtedness may be created and continued in any amount, whether or not in excess of such principal amount, without affecting or impairing the liability of the Undersigned hereunder. The Lender may apply any sums received by or available to Lender on account of the Indebtedness from Borrower or any other person (except the Undersigned), from their properties, out of any collateral security or from any other source to payment of the excess. Such application of receipts shall not reduce, affect or impair the liability of the Undersigned hereunder. If the liability of the Undersigned is limited to a stated amount pursuant to this paragraph 4, any payment made by the Undersigned under this guaranty shall be effective to reduce or discharge such liability only if accompanied by a written transmittal document, received by the Lender, advising the Lender that such payment is made under this guaranty for such purpose.

    5. The Undersigned will pay or reimburse Lender for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by Lender in connection with the protection, defense or enforcement of this guaranty in any litigation or bankruptcy or insolvency proceedings.

This guaranty includes the additional provisions on page 2, all of which are made a part hereof.

This guaranty is ☒ unsecured; ☐ secured by a mortgage or security agreement dated _____ ;
☐ secured by _____

IN WITNESS WHEREOF, this guaranty has been duly executed by the Undersigned the day and year first above written.

_____                    _____
Witness                                      John Kohl

_____
Notary Public, State of Georgia
County of Paulding
My Commission Expires: MAY 26, 2010

## ADDITIONAL PROVISIONS

6. Whether or not any existing relationship between the Undersigned and Borrower has been changed or ended and whether or not this guaranty has been revoked, Lender may, but shall not be obligated to, enter into transactions resulting in the creation or continuance of Indebtedness, without any consent or approval by the Undersigned and without any notice to the Undersigned. The liability of the Undersigned shall not be affected or impaired by any of the following acts or things (which Lender is expressly authorized to do, omit or suffer from time to time, both before and after revocation of this guaranty, without notice to or approval by the Undersigned): (i) any acceptance of collateral security, guarantors, accommodation parties or sureties for any or all Indebtedness; (ii) any one or more extensions or renewals of Indebtedness (whether or not for longer than the original period) or any modification of the interest rates, maturities or other contractual terms applicable to any Indebtedness; (iii) any waiver, adjustment, forbearance, compromise or indulgence granted to Borrower, any delay or lack of diligence in the enforcement of Indebtedness, or any failure to institute proceedings, file a claim, give any required notices or otherwise protect any rights against Borrower; (iv) any full or partial release of, settlement with, or agreement not to sue, Borrower or any other guarantor or other person liable in respect of any Indebtedness; (v) any discharge of any evidence of Indebtedness or the acceptance of any instrument in renewal thereof or substitution therefor; (vi) any failure to obtain collateral security (including rights of setoff) for Indebtedness, or to see to the proper or sufficient creation and perfection thereof, or to establish the priority thereof, or to protect, insure, or enforce any collateral security; or any release, modification, substitution, discharge, impairment, deterioration, waste, or loss of any collateral security; (vii) any foreclosure or enforcement of any collateral security; (viii) any transfer of any Indebtedness or any evidence thereof; (ix) any order or application of any payments or credits upon Indebtedness; (x) any election by the Lender under § 1111(b)(2) of the United States Bankruptcy Code.

7. The Undersigned waives any and all defenses, claims and discharges of Borrower, or any other obligor, pertaining to Indebtedness, except the defense of discharge by payment in full. Without limiting the generality of the foregoing, the Undersigned will not assert, plead or enforce against Lender any defense of waiver, release, statute of limitations, res judicata, statute of frauds, fraud, incapacity, minority, usury, illegality or unenforceability which may be available to Borrower or any other person liable in respect of any Indebtedness, or any setoff available against Lender to Borrower or any such other person, whether or not on account of a related transaction. The Undersigned expressly agrees that the Undersigned shall be and remain liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure of any mortgage or security interest securing Indebtedness, whether or not the liability of Borrower or any other obligor for such deficiency is discharged pursuant to statute or judicial decision. The undersigned shall remain obligated, to the fullest extent permitted by law, to pay such amounts as though the Borrower's obligations had not been discharged.

8. The Undersigned further agrees that the Undersigned shall be and remain obligated to pay Indebtedness even though any other person obligated to pay Indebtedness, including Borrower, has such obligation discharged in bankruptcy or otherwise discharged by law. "Indebtedness" shall include post-bankruptcy petition interest and attorneys' fees and any other amounts which Borrower is discharged from paying or which do not otherwise accrue to Indebtedness due to Borrower's discharge, and the Undersigned shall remain obligated to pay such amounts as though Borrower's obligations had not been discharged.

9. If any payment applied by Lender to Indebtedness is thereafter set aside, recovered, rescinded or required to be returned for any reason (including, without limitation, the bankruptcy, insolvency or reorganization of Borrower or any other obligor), the Indebtedness to which such payment was applied shall for the purposes of this guaranty be deemed to have continued in existence, notwithstanding such application, and this guaranty shall be enforceable as to such Indebtedness as fully as if such application had never been made.

10. The Undersigned waives any claim, remedy or other right which the Undersigned may now have or hereafter acquire against Borrower or any other person obligated to pay Indebtedness arising out of the creation or performance of the Undersigned's obligation under this guaranty, including, without limitation, any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any right to participate in any claim or remedy the Undersigned may have against the Borrower, collateral, or other party obligated for Borrower's debts, whether or not such claim, remedy or right arises in equity, or under contract, statute or common law.

11. The Undersigned waives presentment, demand for payment, notice of dishonor or nonpayment, and protest of any instrument evidencing Indebtedness. Lender shall not be required first to resort for payment of the Indebtedness to Borrower or other persons or their properties, or first to enforce, realize upon or exhaust any collateral security for Indebtedness, before enforcing this guaranty.

12. The liability of the Undersigned under this guaranty is in addition to and shall be cumulative with all other liabilities of the Undersigned to Lender as guarantor or otherwise, without any limitation as to amount, unless the instrument or agreement evidencing or creating such other liability specifically provides to the contrary.

13. This guaranty shall be enforceable against each person signing this guaranty, even if only one person signs and regardless of any failure of other persons to sign this guaranty. If there be more than one signer, all agreements and promises herein shall be construed to be, and are hereby declared to be, joint and several in each of every particular and shall be fully binding upon and enforceable against either, any or all the Undersigned. This guaranty shall be effective upon delivery to Lender, without further act, condition or acceptance by Lender, shall be binding upon the Undersigned and the heirs, representatives, successors and assigns of the Undersigned and shall inure to the benefit of Lender and its participants, successors and assigns. Any invalidity or unenforceability of any provision or application of this guaranty shall not affect other lawful provisions and application hereof, and to this end the provisions of this guaranty are declared to be severable. Except as authorized by the terms herein, this guaranty may not be waived, modified, amended, terminated, released or otherwise changed except by a writing signed by the Undersigned and Lender. This guaranty shall be governed by the laws of the State in which it is executed. The Undersigned waives notice of Lender's acceptance hereof.

(page 2 of 3)

# EXHIBIT "F"

# WIRE TRANSFER



**FirstCaribbean**
INTERNATIONAL BANK
GET THERE, TOGETHER.

STATEMENT OF ACCOUNT                                    XA WORLDWIDE CORPORATION
November 09, 2008: LAST STATEMENT                       5010 W. CARMEN STREET
December 09, 2008: THIS STATEMENT                       SUITE 2130
                                                        TAMPA. FL 33609

FIRST CARIBBEAN INTERNATIONAL BANK
REGIONAL HEAD OFFICE
P.O. BOX 503
WARRENS, ST. MICHAELS
BARBADOS

                                                        DIRECT INQUIRIES TO:
                                                        OPERATION DEPARTMENT
                                                        246-367-2300

XA WORLDWIDE CORPORATION
5010 W. CARMEN STREET
SUITE 2130
TAMPA,. FL 33609

                          ACCOUNT STATEMENT

| S U M M A R Y    O F    A C C O U N T    B A L A N C E    T O T A L | | |
|---|---|---|
| ACCOUNT | NUMBER | ENDING BALANCE |
| CHECKING ACCOUNT | ****8888 | $145,801,002.23 |

CHECKING ACCOUNT

| ACCOUNT NUMBER | | |
|---|---|---|
| ****8888 | BEGINNING BALANCE | $935.20 |
| | TOTAL ADDITIONS | $145,801,002.23 |
| | TOTAL SUBTRACTIONS | 0.00 |

| DATE | DESCRIPTION | ADDITIONS | AVAILABLE BALANCE |
|---|---|---|---|
| 11-17 | #INCOMING WIRE TRANSF | $145,801,002.23 | $3,601,002.23 |



**FIRSTCARIBBEAN**
INTERNATIONAL BANK
GET THERE TOGETHER

December 09, 2008

XA WorldWide Corp
5010 W. Carmen St. Suite 2130
Tampa, FL 33609

Per instructions from XA WorldWide Corporation FirstCaribbean International Bank is making
arrangements for a wire transaction to be delivered to the following attached wire co-ordinance.

4505 Country Club Road
Club Park – Suite 100
Winston-Salem, NC 27104
Phone: 1-888-873-0033 Fax 336-768-3392

Silverton Bank N.A.

## From: International Services Group

### Wire transfer in US Dollars
### VIA SWIFT FORMAT MT103

## Field 56A Intermediary Institution:

Silverton Bank N.A. (formerly The Bankers Bank)

Atlanta, GA      USA

ABA: 061003415, Swift: TBBAUS33

## Field 57D Account with:

Beneficiary Bank:

The Park Avenue Bank

3102 N. Oak Street Extension

Valdosta, GA 31062

Acct # with Silverton Bank N.A.
            1061213153

## Field 59 Beneficiary Customer:

Name      XCHANGEAGENT, Inc.

Address    5010 Carmen Street

Suite 2130  Tampa, FL 33609

Account Number:  ▓▓▓▓▓▓▓

*Please note the address for xchangeAGENT Inc and XA WorldWide Corporation has been corrected from your document. The above co-ordinance has been pasted onto this document to eliminate any human error.*

Transaction amount requested to wire to the above co-ordinance:  $3,500,000.00 USD

This transaction will be complete within the next 24-72 hours.  Please allow appropriate time for an international wire transfer as this is typically not as timely as a national transaction.

International Markets
Commercial Communications

# EXHIBIT "G"

# ACCOUNT CONTROL AGREEMENT

## ACCOUNT CONTROL AGREEMENT

This Account Control Agreement (this "Agreement") is entered into this 4th day of September, 2008, among **THE PARK AVENUE BANK**, a bank chartered under the laws of the State of Georgia ("Lender"); **XCHANGEAGENT, INC.**, a Florida corporation ("Borrower") and **WACHOVIA BANK, N.A.** ("Depository Bank"). The parties hereby agree as follows:

### RECITALS

Pursuant to that certain account agreement (the "Account Agreement"), Depository Bank has established for Borrower a certain depository account and other accounts for the holding of obligations of the United State Treasury (the "Treasuries") described on Exhibit A attached hereto (the "Accounts"). The monetary and securities assets within such Accounts are being held by Depository Bank subject to an administrative hold (the "Hold") pursuant to the policies and procedures of Depository Bank; and

The Hold Period will expire at the close of business of the Depository Bank on October 28, 2008 at the close of business of the Depository Bank (the "Hold Period Expiration Date").

Borrower and Lender are parties to a certain Note and Security Agreement dated even date herewith (as amended from time to time, the "Loan Agreement").

Lender, Borrower and Depository Bank are entering into this Agreement to provide for Lender's control of the Accounts in the event the obligations owing the Lender under the Loan Agreement are in default and to perfect the security interest of Lender in the Accounts and to provided instructions to Depository Bank concerning the delivery of a portion of the proceeds of the Accounts to Lender upon the expiration of the Hold Period.

### THE AGREEMENT

1.    **The Accounts.** Depository Bank hereby represents and warrants to Lender and Borrower that (a) the Accounts have been established in the name of Borrower as recited above, (b) Exhibit A hereto is a complete and accurate statement of the numbers of the Accounts, the type of the Accounts, the full name and address of the branch of Depository Bank where the Accounts are maintained, the monetary value of the Accounts (exclusive of earnings thereon) as of this date, and the officer responsible for the Accounts, and (c) Depository Bank does not know of any claim or interest in the Accounts. Depository Bank has no agreement with Borrower contrary to this Agreement or that would render this Agreement ineffective.

2.    **Priority of Lien.** Depository Bank hereby acknowledges the security interest granted to Lender by Borrower. Depository Bank hereby confirms that each Account is maintained with Depository Bank. Depository Bank hereby waives and releases all liens, encumbrances, claims and rights of setoff it may have against the Accounts or any credit balance in the Accounts and agrees that, except for payment of its customary fees and charges pursuant to the Account

Agreement, it will not assert any such lien, encumbrance, claim or right against the Accounts or any credit balance in the Accounts. Depository Bank will not agree with any third party that Depository Bank will comply with directions concerning the Accounts originated by such third party without the prior written consent of Lender and Borrower.

3.  **Restriction and Delivery of Proceeds of Accounts.** Depository Bank will reinvest all maturing Treasuries in to Treasuries having similar maturities. Depository Bank will not permit the withdrawal of the money or Treasuries from the Account without the joint written authorization of Lender and Borrower; provided, however, at any time after the Hold Period Expiration Date, the Lender by written notice to Depository Bank (i) may exercise exclusive control over the Accounts to Borrower and Depository Bank that the Loan Agreement is in default (the "Notice of Exclusive Control"); or (ii) may instruct the Depository Bank to immediately transfer cash and Treasuries from the Accounts to accounts of Borrower with Lender an amount not to exceed $21,000,000.00 in accordance with to the following instructions (the "Notice of Transfer"):

<strong>Accounts Holding Cash</strong>

| | |
|---|---|
| Funds to be wired to: | The Park Avenue Bank<br>3250 North Valdosta Road<br>Valdosta, Georgia 31602<br>Telephone: (229) 247-5535<br>Attention: Judy Kelly |
| | ABA#061213153 |
| Credit to Account: | XCHANGEAGENT, INC. |
| Account Number: | 14746201 |
| Reference: | Loan Number: 311283411 |

<strong>Accounts Holding Treasuries</strong>

| | |
|---|---|
| Safekeeping Delivery Instructions: | 021000018<br>Bank of NYC/1020<br>A/C 351671<br>SunTrust Bank |
| For Further Credit to: | Park Avenue Bank A/C 1598 |
| Reference: | Loan Number: 311283411 |

VALDA-#2374437-v3-Control_Agreement[1]

The authorized signatories of Lender whose signature follows his name and title are:

| | | |
|---|---|---|
| Thompson Kurrie, III | Vice President | ; or, |
| Wesley Fuller | Executive Vice President | ; or, |

such other officer of Lender so designated by its President and Chief Executive Officer in writing to Depository Bank and Borrower.

The authorized signatory of Borrower whose signature follows his name and title is:

| | | |
|---|---|---|
| Michael A. Prozer, III | President and Chief Executive Officer | ; or, |

such other officer of Borrower so designated by its President in writing to Depository Bank and Lender.

Depository Bank shall comply with the provisions of the Notice of Exclusive Control and the Notice of Transfer.

4.    **Statements, Confirmations and Notices of Adverse Claims.** Depository Bank will send copies of all statements, confirmations and other correspondence concerning the Accounts simultaneously to each of Borrower and Lender at the addresses set forth on the signature pages of this Agreement. If any person asserts any lien, encumbrance or adverse claim against the Accounts, Depository Bank will promptly notify Lender and Borrower thereof.

5.    **Responsibility of Depository Bank.** Depository Bank shall have no responsibility or liability to Lender or Borrower for disposing of the funds or Treasuries in the Accounts in accordance with Section 3 of this Agreement. In the event of a receipt of Notice of Exclusive Control, Depository Bank shall have no duty to investigate or make any determination as to whether a default exists under the Loan Agreement or any agreement between Borrower and Lender. This Agreement does not create any obligation or duty of Depository Bank other than those expressly set forth herein.

6.    **Tax Reporting.** All items of income, gain, expense, and loss recognized in the Accounts shall be reported to the Internal Revenue Service and all state and local taxing authorities under the name of taxpayer identification number of Borrower.

7.    **Customer Agreement.** In the event of a conflict between this Agreement and any other agreement between Depository Bank and Borrower, the terms of this Agreement will prevail. Regardless of any provision in such agreement, the State of Florida shall be deemed to be Depository Bank's location for the purposes of this Agreement and the perfection and priority of Lender's security interest in the Accounts.

VALDA-%2374437-v3-Control_Agreement[1]

8.     Termination.  The rights and powers granted herein to Lender have been granted in order to perfect its security interest in the Accounts, are powers coupled with an interest and will neither be affected by bankruptcy of Borrower nor by the lapse of time. The obligations of Depository Bank under Sections 2, 3 and 4 above shall continue in effect until earlier of (i) the irrevocable transfer to Borrower of cash and Treasuries pursuant to a Notice of Transfer by Lender or (ii) the security interest of Lender in the Accounts has been terminated and Lender has notified Depository Bank of such termination in writing (the "Notice of Termination").  Upon receipt of the Notice of Termination of Depository Bank under Sections 2, 3, and 4 above with respect to the operation and maintenance of the Accounts after the receipt of such notice shall terminate, Lender shall have no further right to direct the disposition of funds held in the Accounts and Depository Bank may take such steps as Borrower may request to vest full ownership and control of the Accounts in Borrower, including, but not limited to, transferring all of the funds held in the Accounts to another account in the name of Borrower or its designee.

9.     This Agreement.  This Agreement, the exhibits hereto and the agreements and instruments required to be executed and delivered hereunder set forth the entire agreement of the parties with respect to the subject matter hereof and supersede and discharge all prior agreements (written or oral) and negotiations and all contemporaneous oral agreements concerning such subject matter and negotiations.  There are no oral conditions precedent to the effectiveness of this Agreement.

10.    Amendments.  No amendment, modification or termination of this Agreement or waiver of any right hereunder shall be binding on any party hereto unless it is in writing and is signed by the party to be charged.

11.    Severability.  If any term or provision set forth in this Agreement shall be invalid or unenforceable, the remainder of this Agreement, or the application of such terms or provisions to persons or circumstances, other than those to which it is held invalid or unenforceable, shall be construed in all respects as if such invalid or unenforceable term or provision were omitted.

12.    Successors.  The terms of this Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and assigns.

13.    Rules of Construction.  In this Agreement, words in the singular number include the plural, and in the plural include the singular. The captions and section numbers appearing in this Agreement are inserted only as a matter of convenience. They do not define, limit or describe the scope or intent of the provisions of this Agreement.

14.    Notices.  Any notice, request or other communication required or permitted to be given under this Agreement shall be in writing and deemed to have been properly given when delivered in person, or when sent by telecopy or other electronic means and electronic confirmation or error free receipt is received or three days after being sent by certified or registered United States mail, return receipt requested, postage prepaid, addressed to the party at the address set forth next to such parties' name on the signatures pages of this Agreement. Any party may change its address for notices in the manner set forth above.

CH\705505.3                                        VALOA-92374437-v3-Control_Agreement[1]

15.     Counterparts.  This Agreement may be executed in any number of counterparts, all of which shall constitute one and the same instrument, and any party hereto may execute this Agreement by signing and delivering one or more counterparts.

16.     Choice of Law.  The parties hereto agree that certain material event, occurrences and transactions relating to this Agreement bear a reasonable relationship to the State of Florida.  The validity, terms, performance and enforcement of this Agreement shall be governed by those laws of the State of Georgia which are applicable to agreements which are negotiated, executed, delivered and performed solely in the State of Florida.

[Signatures on following page]

ATTEST:

_____
Secretary

XCHANGEAGENT, INC.
("Borrower")

By: _____
Name: Michael A. Prozer, III
Title:  Chief Executive Officer

Address:    1753 Ripley Run
            Wellington, Florida 33414

Attention:  Chief Executive Officer
Facsimile:

- 5 -

WACHOVIA BANK, N.A.
("Depository Bank")

By: _____
Stan Salinas
Title: FINANCIAL SPECIALIST.

By: _____
Gladstone Williams
Title: REGIONAL DIRECTOR

Address:

Attention:
Facsimile:

STATE OF _Maryland_ )
                     )ss
COUNTY OF _Prin George_ )

I HEREBY CERTIFY that on this day personally appeared before me, officers duly authorized to administer oaths and take acknowledgments, Stan Salinas, the _Financial Specialist_ of Wachovia Bank, N.A. and Gladstone Williams, the _Regional Director_ of Wachovia Bank, N.A., to me personally known, or who furnished to me Driver's License # _M-250-191-145-046_ or _Sufficient Identity_ as proof of identity, to be the people described in and who executed the foregoing instrument and duly acknowledged before me that he/she executed the same for the purposes therein expressed as the act and deed of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and [affixed my official seal] at _12155_, said County and State, this _4_ day of _September_, A.D., 2008.

_____
Notary Public – State of Florida – Maryland

Print Name: _MARTIN H. Thomas_

My commission expires: _11-3-09_

[Notary Seal]

MARTIN H. THOMAS
Notary Public, State of Maryland
Prince George's County
My Commission Expires November 3, 2009

CH\203195.3Error! Unknown document property name.

<u>**EXHIBIT A**</u>
**To**
**Account Control Agreement**

<u>Listing of Borrower's Accounts</u>

| Account Number | Type of Account and Balance | Name and Address of Branch | Responsible Officer |
|---|---|---|---|
| 2000035354981 | Custom Business Checking; U.S. Treasuries | Langley Park Financial Center 117 University Blvd. Langley Park, MD 20783 | _____ |

VALDA-92374437-v3-Control_Agreement(1)

**THE PARK AVENUE BANK**
("Lender")

By: _____

Name: Thompson Kurrie, III
Title:   Vice President

Mailing
Address:        P. O. Box 3730
                Valdosta, Georgia 31604


Courier
Address:        3250 North Valdosta Road
                Valdosta, Georgia 31602
Attention:      President
Facsimile:      (229) 241-2778

https://www.ups.com/uis/create?ActionOriginPair=print__UISReceipt&POPUP_LEVE...    12/17/2008

RS

LTR                                          1 OF 1

WACHOVIA BANK
1375 UNIVERSITY BLVD
TACOMA PARK MD 20912

SHIP TO:
B. HOSEA/G. WILLIAMS
AMERIFUND CORP
SUITE 200
4463 CHEROKEE STREET
ACWORTH GA 30101-4985

GA 301 2-01

UPS NEXT DAY AIR    1

TRACKING #: 1Z 841 FX5 84 9502 7615

BILLING: P/P
DESC: Document
RETURN SERVICE

AMERIFUND
4463 CHEROKEE ST
STE 200
ACWORTH GA 30101-4913

P:TOP    S:EVEN    1:30

28P-1492                    1200

1Z841FX5849502 7615

